# EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
06/22/2016
CT Log Number 529380806

TO: Gale Delfino
Phoenix Life Insurance Company
One American Row
Hartford, CT 06102

**RECEIVED**

**JUN 2 3 2016**

**LAW DEPT.**

RE: **Process Served in New Mexico**

FOR: PHL Variable Insurance Company  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Caroline H. Shryock and Gayle L. Lewis, etc., Pltfs. vs. PHL Variable Insurance Company, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Jury Demand |
| **COURT/AGENCY:** | San Juan County - Eleventh Judicial District Court, NM<br>Case # D1116CV201600730 |
| **NATURE OF ACTION:** | Insurance Litigation - Claim for policy benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Espanola, NM |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/22/2016 postmarked on 06/20/2016 |
| **JURISDICTION SERVED :** | New Mexico |
| **APPEARANCE OR ANSWER DUE:** | No later than 30 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | Clinton W. Marrs<br>Marrs Griebel Law, Ltd.<br>1000 Gold Avenue, SW<br>Albuquerque, NM 87102<br>505-433-3926 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/22/2016, Expected Purge Date: 06/27/2016<br><br>Image SOP<br><br>Email Notification,  Gale Delfino  gale.delfino@phoenixwm.com<br><br>Email Notification,  Joseph Tedone  joseph.tedone@phoenixwm.com<br><br>Email Notification,  John Mulrain  john.mulrain@phoenixwm.com<br><br>Email Notification,  Liza Fletcher  liza.fletcher@phoenixwm.com<br><br>Email Notification,  John Beers  JOHN.BEERS@phoenixwm.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>206 S Coronado Ave<br>Espanola, NM 87532-2792<br>360-357-6794 |

Page 1 of  1 / VP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



Superint
Service of Process
PO Box 1689
Santa Fe, NM 87504-1689

7010 0290 0002 3837 6424

U.S. POSTAGE >> PITNEY BOWES
ZIP 87501   $ 007.78
02 4W
0000340467 JUN 20 2016

PHL Variable Insurance Co.
C/O CT Corporation Systems
206 S. Coronado Avenue
Espanola, NM 87532

STATE OF NEW MEXICO
**OFFICE OF SUPERINTENDENT OF INSURANCE**
Mailing Address: P.O. Box 1689, Santa Fe, NM 87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM 87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF
INSURANCE**
John G. Franchini – (505) 827-4299

**Service of Process**
Room 434
(505) 827-1291

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439

June 17, 2016

PHL Variable Insurance Co.
C/O CT Corporation Systems
206 S. Coronado Avenue
Espanola, NM 87532

Re: Caroline H. Shryock and Gayle L. Lewis as trustees of The Caroline H. Shryock Living
Trust Vs PHL Variable Insurance Company, Diamond & Associates Retirement Planning
Services Inc. and Mark Stephen Diamond,
D1116CV2016-00730

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a
copy of a Summons, Complaint, and Plaintiff's Jury Demand, to Defendant PHL Variable
Insurance Company in the State of New Mexico on the above styled cause, Service has been
accepted on your behalf as of June 17, 2016.

Respectfully,

John G. Franchini, Superintendent

Enclosure

CERTIFIED MAIL  7010 0290 0002 3837 6424

| **SUMMONS** | |
|---|---|
| District Court: ELEVENTH JUDICIAL<br>San Juan County, New Mexico<br>Court Address:<br>103 S. Oliver<br>Aztec, NM 87410<br>Court Telephone No.: 505-334-6151 | Case Number:<br>**D-1116-CV-2016-00730**<br><br>Assigned Judge:<br>**Bradford J. Dalley** |
| Plaintiff(s):<br>**CAROLINE H. SHRYOCK and**<br>**GAYLE L. LEWIS as trustees of**<br>**THE CAROLINE H. SHRYOCK**<br>**LIVING TRUST,**<br>v.<br>Defendant(s):<br>**PHL VARIABLE INSURANCE COMPANY,**<br>**DIAMOND & ASSOCIATES**<br>**RETIREMENT PLANNING SERVICES,**<br>**INC. and MARK STEPHEN DIAMOND** | Defendant<br>Name: **PHL Variable Insurance Company**<br>**c/o Office of Superintendent of Insurance**<br><br>Address: |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Aztec_____, New Mexico, this 14th day of ____June____, 2016.

WELDON J. NEFF
CLERK OF DISTRICT COURT

By: _Dauuya J Cordova_
     Deputy

DISTRICT
COURT
STATE OF NEW MEXICO
COUNTY OF SAN JUAN

**RECEIVED**

JUN 1 7 2016

Office of Superintendent
of Insurance

MARRS GRIEBEL LAW, LTD.

By____ /s/ Clinton W. Marrs____
        Clinton W. Marrs
        1000 Gold Avenue, SW
        Albuquerque, NM 87102
        (505) 433-3926
        *Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF NEW MEXICO          )
                             )ss.
COUNTY OF _____    )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, 2016, by delivering a copy of this summons, with a copy of the Complaint and the Jury Demand attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]  to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]  to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]  to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]  to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, 2016[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

**USE NOTE**

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.
[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007;  by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/14/2016 10:12:24 AM
WELDON J. NEFF
Dacia Schart

**STATE OF NEW MEXICO**
**COUNTY OF SAN JUAN**
**ELEVENTH JUDICIAL DISTRICT COURT**

**CAROLINE H. SHRYOCK and GAYLE L. LEWIS**
**as trustees of THE CAROLINE H. SHRYOCK**
**LIVING TRUST,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　**Case No.**　　D-1116-CV-2016-00730

**PHL VARIABLE INSURANCE COMPANY,**
**DIAMOND & ASSOCIATES RETIREMENT**
**PLANNING SERVICES, INC. and MARK**
**STEPHEN DIAMOND,**

      **Defendants.**

## COMPLAINT

    Caroline H. Shryock and Gayle L. Lewis in their capacity as trustees of The Caroline H. Shryock Living Trust complain against PHL Variable Insurance Company, Diamond & Associates Retirement Planning Services, Inc., and Mark Stephen Diamond.

### What This Case Is About

    Defendants misrepresented material facts and abused Plaintiffs' trust in order to obtain unfair profiits, including a commission of about $75,000, when Defendants redirected nearly $1,000,000 that Plaintiffs had in other investments into an annuity. At the time the annuity was sold to Mrs. Shryock, she was in her 90s. The annuity was wholly unsuitable to Plaintiffs' needs. Plaintiffs learned of the annuity's unsuitability in 2015, when Plaintiffs' tax preparer, Gervias & Associates, explained the annuity's grave negative consequences to them. Paul Gervais of Gervais & Associates attempted to help Plaintiffs by sending a letter to Defendants where he explained that Plaintiffs had been duped into putting nearly $1,000,000 into the wholly

1

unsuitable annuity. In response, Defendants not only refused to make matters right, but sued Mr. Gervais for defamation in a lawsuit that was quickly dismissed.

### Parties, Jurisdiction, & Venue

### Plaintiffs & the Trust

1.      Plaintiff Caroline H. Shryock resides in this judicial district, in Kirtland, New Mexico.

2.      Mrs. Shryock was born in 1920. Her husband of 50 years, Louis Shryock, passed away in 1996. Mrs. Shryock worked outside the home early in their marriage, but had her last job more than 50 years ago. From her 60s into her 90s, Mrs. Shryock volunteered extensively with the Girl Scouts.

3.      Plaintiff Gayle L. Lewis partly resides in this judicial district and has a home in Farmington, New Mexico.

4.      Ms. Lewis is Mrs. Shryock's neice. Ms. Lewis grew up in Durango, Colorado and now splits her time between her home in Farmington, New Mexico, in part to look after Mrs. Shryock, and a second home in Casa Grande, Arizona. Ms. Lewis is an artist. She primarily paints landscapes of the Four Corners area. From 2005 to 2007, Ms. Lewis taught drawing classes at San Juan College.

5.      Mrs. Shryock is the trustor of a trust known as The Caroline H. Shryock Living Trust ("*Trust*"). She and Ms. Lewis are co-trustees of the Trust.

### Defendants

6.      Defendant PHL Variable Insurance Company ("*PHL*") is a corporation organized under the law of the state of Connecticut with its principal place of business in Connecticut.

2

7.      Defendant Diamond & Associates Retirement Planning Services, Inc. ("*DARPS*")
is a corporation organized under the law of the state of Arizona with its principal place of
business in Arizona.

8.      Defendant Mark Stephen Diamond is a citizen of the state of Arizona and resides
in Arizona. On information and belief, at all times material to the subject matter of this complaint
Mr. Diamond owned all or a majority of the issued and outstanding stock of DARPS.

9.      At all times material to the subject matter of this complaint, DARPS and Mr.
Diamond engaged in the business of marketing and selling, among other things, the services of
financial education, protection, and retirement planning to elderly persons and the services of
marketing and facilitating the sale of annuity and insurance products as an agent of insurers that
issued the products.

10.     On April 25, 2011, Mr. Diamond was licensed by the New Mexico Insurance
Division of the Public Regulation Commission as an insurance agent and subsequently was
appointed by PHL to act as its agent in New Mexico. PHL held Mr. Diamond out to Mrs.
Shryock and Ms. Lewis as its "financial representative."

11.     At all times material to the subject matter of this complaint, PHL engaged in the
business of marketing and selling, among other things, annuity products. Before 2010, PHL
focused its marketing strategies on high-net-worth and affluent households with sophisticated
estate planning and other financial needs. Following business upsets and financial-strength rating
downgrades in 2009, PHL changed its target market for new sales of products and began
focusing on middle market households with a variety of financial planning needs, such as tax-
deferred savings, safety of principal, guaranteed income during retirement and modest death

benefits. By 2011, PHL's typical customer was between 50 and 80 years old, with an average annual income of $60,000 and an average net worth of $625,000.

12.    In 2009, consistent with shifting its target market from high-net-worth and affluent households to the middle market, PHL began to distribute its products through producers who typically were affiliated with one or more independent marketing organizations pursuant to selling agreements. On information and belief, PHL entered into one or more selling agreements with DARPS, Mr. Diamond, or both of them.

13.    At all times material to the subject matter of this complaint, as PHL's agent Mr. Diamond engaged in New Mexico in the business of soliciting the purchase of, negotiating the terms of, and selling, annuity products issued by PHL.

14.    Defendants submitted to the Court's jurisdiction as to the causes of action alleged by this complaint arising from their transactions of business within this state and its commission of a tortious act within this judicial district.

15.    This judicial district is a proper venue for this action.

### Allegations Common to All Counts

### Defendants' Recommendation of the Unsuitable Annuity

16.    In 2011 Plaintiffs were, and to this day continue to be, inexperienced and unsophisticated in and with respect to investment, insurance, and tax planning involving securities, annuity products, and insurance products.

17.    At all times material to the subject matter of this complaint, Mrs. Shryock was financially conservative. She owned a medical insurance policy that supplemented her Medicare insurance benefits. She relied on savings, social security, certificates of deposit, and low risk mutual fund investments to meet her needs for current income and the safety of her financial

4

assets. In view of her advanced age and modest current-income need, and provided her assets were invested suitably, in 2011, when she first met Mr. Diamond, Mrs. Shryock possessed sufficient financial assets to assure that her income needs could be met during the remaining years of her life.

18.    In view of her advanced age, financial situation and needs, and other considerations, in 2011, when she first met Mr. Diamond, Mrs. Shryock and the Trust's investment objective primarily was preservation of capital and her tolerance of risk in her investments was correspondingly low.

19.    Plaintiffs saw an ad in the Farmington newspaper about a financial investments seminar hosted by Defendants at a Farmington hotel. With the ad and seminar, Defendants promoted Mr. Diamond as an educator of senior citizens with respect to financial and investment planning matters with a view towards enlisting attendees as new clients for the sale of financial planning and investment advisory services and the sale of annuities and other financial products.

20.    Mrs. Shryock does not have any children. She desired to bestow financial benefits on her grandnieces and grandnephews upon her death. She desired to use the Trust as a means of creating an education legacy by providing educational funding to the Trust's beneficiaries, including her grandnieces and grandnephews.

21.    Mrs. Shryock and Ms. Lewis attended Mr. Diamond's seminar in or about May 2011. Mrs. Shryock was interested in learning more about how he might help her with her goal of providing educational funding to her grandnieces and grandnephews. Consequently, she and Ms. Lewis asked if they could meet with him to discuss the best ways to achieve this goal.

22.    Mr. Diamond and an individual he identified as his associate subsequently met with Mrs. Shryock and Ms. Lewis at Ms. Lewis' home in Farmington, New Mexico. At this

5

meeting, Mr. Diamond and his associate gathered information about Mrs. Shryock, Ms. Lewis, the Trust, and its beneficiaries.

23.     By the conclusion of the first meeting, Mr. Diamond knew, or should have known, that Mrs. Shryock's primary investment objective was preservation of capital, her risk tolerance was correspondingly low, her primary trust objective was to ensure that all of her grandnieces and grandnephews' educational needs would be fully funded, and the Trust was revocable. At the conclusion of the meeting, Mr. Diamond offered to evaluate the information he had gathered and return for a second meeting to present his recommendations of how Mrs. Shryock could best achieve these goals. Believing Mr. Diamond to be a financial representative who specialized in advising senior citizens in the suitable investment of their financial assets, Mrs. Shryock and Ms. Lewis accepted Mr. Diamond's offer and agreed to receive his recommendations.

24.     When Mr. Diamond returned to Kirtland, New Mexico to meet with Mrs. Shryock and Ms. Lewis again, he emphasized that the Trust's investment portfolio was plagued with uncertainty, was exposed to losses if it remained invested in mutual funds and other equity securities and inflation if invested in bonds and other fixed-income securities. He emphasized that the portfolio earnings were subject to income taxation, which diminished the opportunity for the portfolio to grow.

25.     Having emphasized the investment risks of the Trust's portfolio, Mr. Diamond then explained that Mrs. Shryock and Ms. Lewis that the Trust could avoid these risks and best achieve the goal of funding all of her grandniece and grandnephews' educational needs by selling the Trust's securities portfolio and using the proceeds of the sale to purchase a single-premium annuity.

6

26.     Mr. Diamond was not licensed by any federal or state authority, including New Mexico's Securities Division, to recommend to, or advise, Mrs. Shyrock and Ms. Lewis that the Trust should sell its securities portfolio and use the proceeds of the sale to invest in an annuity.

27.     Mr. Diamond informed Mrs. Shryock and Ms. Lewis that he was a financial representative of PHL, which he explained was a leading issuer of annuities. He stated that an indexed annuity issued by PHL could best accomplish Mrs. Shryock and the Trust's conservative investment objective and risk tolerance, and its educational-funding goal, because the "earnings" of such an annuity would be tax-deferred, allowing the Trust's assets to grow more quickly, and because this growth could be achieved with no risk of loss of invested principal.

28.     Additionally, in a further effort to persuade Mrs. Shryock and Ms. Lewis to accept his recommendation, Mr. Diamond touted a "bonus deposit" feature of the annuity pursuant to which, in exchange for crediting the annuity with a 10% "bonus," the surrender period of the annuity was extended. In touting this feature, Mr. Diamond failed to explain the risks and burdens to the Trust and the trustor's intentions occasioned by the extension of the surrender period.

29.     Mr. Diamond did not present Mrs. Shryock and Ms. Lewis with any alternatives to investing in a single-premium indexed annuity. He did not explain, identify, or otherwise bring to Mrs. Shryock's or Ms. Lewis's attention that Mrs. Shryock and the Trust could accomplish their educational-funding goals in a substantially more tax-advantaged way, while meeting their conservative investment objective and investment risk tolerance.

30.     In view of PHL's apparent business reputation, Mr. Diamond's status as PHL's financial representative, and their own inexperience and ignorance with respect to the use of

trusts and annuities in financial planning, it did not occur to Mrs. Shryock or Ms. Lewis to question the veracity, completeness, or competence of Mr. Diamond's representations.

31.    Relying on Mr. Diamond's professed expertise, his representations, and the apparent business reputation of PHL, Mrs. Shryock and Ms. Lewis accepted Mr. Diamond's recommendation that a single-premium indexed annuity, issued by PHL, was the best means for accomplishing Mrs. Shryock and the Trust's educational-funding goals, his recommendation that the Trust should sell its existing securities portfolio and use the cash proceeds to purchase the annuity, and his direction and guidance in formulating and implementing of his recommendations.

32.    To the extent that Mrs. Shryock and Ms. Lewis sought a second opinion, Mr. Diamond neutralized the impact of the second opinion through deceptive and misleading statements. Mrs. Shryock and Ms. Lewis asked their tax advisor, Mr. Gervais, about what Mr. Diamond had proposed. Mr. Gervais told them that an annuity would not meet their goals and was not a suitable product. When Mrs. Shryock and Ms. Lewis reported Mr. Gervais' advice to Mr. Diamond, Mr. Diamond told them that Mr. Gervias was mistaken and the product Mr. Diamond was selling them actually was not an annuity.

**The Unsuitable Annuity**

33.    Mr. Diamond chose PHL's "Phoenix Reflections Gold Bonus" single-premium indexed annuity as purportedly the best product to meet Plaintiffs' professed needs and goals. He filled out an application for the annuity and a "Suitability Confirmation and Customer Identification Questionnaire," furnished the documents to Mrs. Shryock and Ms. Lewis, and urged them to sign the documents. At his direction, Mrs. Shryock and Ms. Lewis signed the application and Ms. Lewis alone signed the questionnaire.

8

34.     In the "Suitability Confirmation and Customer Identification Questionnaire," Plaintiffs confirmed in writing that one of their financial objectives was tax deferral.

35.     In the "Suitability Confirmation and Customer Identification Questionnaire," Plaintiffs confirmed in writing that their "decision to purchase this annuity [was] based on [Mr. Diamond's] recommendation."

36.     Mr. Diamond and Plaintiffs signed this document on August 6, 2011.

37.     The annuity sold to them did not provide for tax deferral.

38.     Southwest Securities transferred the sum of $967,256.57 to PHL as payment of the single premium for the annuity that Mr. Diamond recommended. Mr. Diamond directed the purchase of an annuity contract known as the "Phoenix Reflections Gold Bonus," numbered 28149557, that PHL characterized as a "Modified Single Premium Deferred Fixed Modified Guaranteed Indexed Annuity" that was, in addition to these characteristics, "Nonparticipating".

39.     The compensation to PHL and Mr. Diamond on account of selling the Phoenix Reflections Gold Bonus annuity ("*PHL Annuity Commission*"), on information and belief, was approximately $75,000, which was substantially more than the compensation that otherwise would have been payable on account of suitable recommendations to Mrs. Shryock and Ms. Lewis.

40.     Mr. Diamond did not explain, identify, flag, or otherwise bring to Mrs. Shryock's or Ms. Lewis's attention any of the following risks material to the suitability of his recommendation:

    a.  The interest-rate risk that the actual interest amounts credited to the annuity would underperform relative to returns that could be realized on a laddered portfolio of government securities without conferring any commensurate safety of principal.

      b.  The income-tax risk that withdrawals from the annuity would be currently taxed at higher rates applicable to the Trust, which risk would be compounded after Mrs. Shryock's death, when the Trust would become irrevocable and thus exposed to higher rates of income-taxation for the duration of the Trust.

      c.  The illiquidity risks arising from the 12-year surrender charge schedule.

      d.  The expense risk that the annuity's commission and surrender charges were higher than the costs and expenses of investing in alternative suitable securities without conferring any commensurate prospects of return, liquidity, or safety of principal.

41.    Mr. Diamond did not present Mrs. Shryock or Ms. Lewis with any other information from which they might have gleaned that the recommendation otherwise was wholly unsuitable for Mrs. Shryock and the Trust.

42.    PHL furnished Ms. Lewis with a notice of a 10-day opportunity to rescind the annuity. The policy was not rescinded because neither Mrs. Shryock nor Ms. Lewis received any notice that the annuity was wholly unsuitable during this time period.

43.    The Phoenix Reflections Gold Bonus annuity is a type of fixed annuity that is indexed. It offered a fixed-interest account and indexed accounts for the annuity's owner to earn "index credits" based on the performance of a specific equity market or other price index (or indices). Money in a fixed indexed annuity earns interest based on changes in the applicable index. In 2011, PHL's major source of revenue on these annuities was the excess of investment income earned on the premium paid by the owner over interest and index credits, if any, that PHL credited to the annuity.

44.     The Phoenix Reflections Gold Bonus annuity is a type of fixed annuity that is deferred. Income from a deferred annuity is postponed, or *deferred*, for a period of time known as the "accumulation" period, which is the time between when the owner begins paying premiums and when income payments begin. The period of time during which income is paid is known as the "payout" period.

45.     During the accumulation period of a fixed deferred annuity, the amount of money paid as the premium, less any applicable fees and expenses charged by the annuity's issuer, earns interest at rates as specified in the annuity contract. During the payout period, the amount of each income payment to the annuity's owner is generally set, or *fixed*, when the payments start and does not change.

46.     By design, an annuity is a long-term, illiquid, investment vehicle. An annuity is not meant to be used to meet short-term financial goals.

47.     PHL issued the annuity on August 22, 2011.

### Plaintiffs Learn About the Annuity's Unsuitability

48.     In 2014, Mrs. Shryock obtained about $100,000 from the annuity.

49.     In or about June 2015, Mr. Gervais informed Mrs. Shryock and Ms. Lewis that the annuity withdrawal had triggered a substantial income-tax liability.

50.     Prior to this time, Mrs. Shryock and Ms. Lewis had not understood the annuity was unsuitable to meet their needs because they had believed Mr. Diamond's assurances that it was the best product to meet their needs and because reasonable diligence on their part would not have revealed otherwise.

**Defendants Refuse to Accept Responsibility**

51.    In a letter dated August 26, 2015, Mr. Gervais asked PHL to rescind the annuity, stating:

      a.  "it is obvious that she did not understand what it was that she was purchasing;"

      b.  "this 'sale' was made to her under deceptive and misleading circumstances;"

      c.  the annuity "was a highly inappropriate investment to sell to a person of Ms. Shryock's age and financial circumstances;"

      d.  "It is our professional opinion that not only was this investment unsuitable for this consumer's needs, but your agents' actions were unconscionable and egregiously inappropriate;" and

      e.  "Mr. Diamond['s] . . . actions were merely those of a scam artist preying on the lack of knowledge and understanding of the elderly, and were done so by him with full knowledge and intention to take advantage of someone in such a vulnerable state of life."

52.    PHL refused to rescind the annuity.

53.    Mr. Diamond sued Mr. Gervais for defamation.

54.    Mr. Diamond's defamation suit was quickly dismissed.

**Defendants Have Caused Plaintiffs Damages**

55.    Because of Defendants' acts and failures to act as allege herein, Plaintiffs suffered damages caused by the liquidation of the Trust's suitable securities portfolio, including acceleration and recognition of tax liabilities, payment of sales commissions, and loss of capital appreciation of, and income from, the suitable securities, and damages caused by reinvestment of

the net sales proceeds into the unsuitable annuity, including the PHL Annuity Commission and additional income tax costs.

56.     Defendants abused plaintiffs' trust and their lack of knowledge, ability, experience, and capacity to a grossly unfair degree and acted willfully, recklessly or in wanton disregard of their rights in acting and failing to act in the manner complained of herein.

### CLAIMS FOR RELIEF

### First Claim for Relief
### *[Unfair Insurance Practices]*

57.     Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

58.     Defendants' acts and failures to act as alleged herein constitute unfair or deceptive acts or practices in the business of insurance within the meaning of New Mexico's Unfair Insurance Practices Act, NMSA 1978 §§ 59A-16-1 *et seq. ("UIPA")*, including §§ 59A-16-4(A), 59A-16-4(G) and 59A-16-6.

59.     Defendants took advantage of Plaintiffs' lack of knowledge, ability, experience, and capacity to a grossly unfair degree and employed unconscionable trade practices within the meaning of UIPA.

60.     Defendants willfully engaged in the actions and willfully perpetrated the omissions that resulted in the violations of the UIPA.

61.     Defendants are jointly and severally liable to Plaintiffs for actual damages.

62.     Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the

highest rate permitted by New Mexico law from the date of such judgment until the judgment is paid.

63.     Defendants are jointly and severally liable to Plaintiffs for all the costs and attorney fees they incurred in this proceeding to the fullest extent permitted by New Mexico law.

**Second Claim for Relief**
*[Unfair Trade Practices]*

64.     Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

65.     Defendants knowingly made the false or misleading oral or written statements and other representations to Plaintiffs as alleged herein in connection with the marketing and sale of financial planning services in their regular course of trade or commerce, including their recommendations to sell the Trust's existing portfolio of suitable securities and use the proceeds of sale to invest in the annuity.

66.     The acts and omissions as alleged herein constitute unfair trade practices within the meaning of the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1 *et seq. ("UPA")*, including NMSA 1978 § 57-12-2(D) generally and NMSA 1978 §§ 57-12-2(D)(7), 57-12-2(D)(8), 57-12-2(D)(12), 57-12-2(D)(14), 57-12-2(D)(15), 57-12-2(D)(16) and 57-12-2(D)(17) specifically.

67.     The acts and omissions as alleged herein constitute unconscionable trade practices within the meaning of UPA, including NMSA 1978 § 57-12-2(E) generally and NMSA 1978 §§ 57-12-2(E)(1) and 57-12-2(E)(2) specifically.

68.     Defendants took advantage of Plaintiffs' lack of knowledge, ability, experience, and capacity to a grossly unfair degree within the meaning of UPA.

14

69.     Defendants willfully engaged in the actions and willfully perpetrated the omissions that resulted in the violations of the UPA.

70.     Defendants are jointly and severally liable to plaintiffs for actual damage or statutory damages, trebled, whichever is greater.

71.     Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the highest rate permitted by New Mexico law from the date of such judgment until the judgment is paid.

72.     Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred in this proceeding to the fullest extent permitted by New Mexico law.

### Third Claim for Relief
### *[Breach of Fiduciary Duty]*

73.     Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

74.     Defendants expected Plaintiffs to repose special confidence in them and Plaintiffs in fact reposed this special confidence in them, viewed the relationship between the parties as one of trust and confidence and necessarily relied on their expertise and care to pursue only those financial planning and investment strategies that were suitable for them.

75.     Defendants owed Plaintiffs a fiduciary duty of utmost good faith, fair dealing, and loyalty.

76.     Defendants breached their fiduciary duty.

77.     Defendants are jointly and severally liable to Plaintiffs for actual damages and punitive damages.

15

78.    Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the highest rate permitted by New Mexico law from the date of such judgment until the judgment is paid.

79.    Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred in this proceeding to the fullest extent permitted by New Mexico law.

### Fourth Claim for Relief
*[Negligent Misrepresentation]*

80.    Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

81.    Defendants owed Plaintiffs a duty to exercise reasonable care and competence:

a.    to investigate and obtain accurate and correct information about the subject matter of the financial planning services offered and delivered to them, including the Trust's suitability of the existing securities portfolio, the annuity, and the subject matter of Mr. Diamonds recommendations;

b.    to communicate accurate and correct information to Plaintiffs regarding their findings and conclusions about Mr. Diamonds' recommendations;

c.    to supervise the formulation and communication of such information about the subject matter of the recommendation; and

d.    to monitor the supervision of Mr. Diamond with respect to his recommendations and to ensure compliance with federal and state securities and insurance laws and regulations and PHL's own applicable rules, policies and guidelines.

82.    Defendants breached their duty of ordinary care.

16

83.    Defendants are jointly and severally liable to Plaintiffs for actual damages and punitive damages.

84.    Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the highest rate permitted by New Mexico law from the date of such judgment until the judgment is paid.

85.    Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred in this proceeding to the fullest extent permitted by New Mexico law.

### Fifth Claim for Relief
### *[Breach of Contract]*

86.    Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

87.    Defendants entered into an oral contract to provide Plaintiffs with financial planning services to meet their needs with respect to the Trust, its existing securities portfolio, and their intentions vis a vis the Trust's beneficiaries.

88.    Defendants entered into a written contract to provide Plaintiffs with a financial product that would meet their tax deferral needs.

89.    Defendants breached these contracts.

90.    Defendants are jointly and severally liable to plaintiffs for actual and punitive damages.

91.    Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the

highest rate permitted by New Mexico law from the date of such judgment until the judgment is
paid.

92.     Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred
in this proceeding to the fullest extent permitted by New Mexico law.

### Sixth Claim for Relief
### *[Breach of Covenant of Good Faith and Fair Dealing]*

93.     Plaintiffs incorporate by reference the preceding allegations as though set forth
fully herein.

94.     By virtue of Defendants' contracts with Plaintiffs, Defendants owed Plaintiffs a
covenant of good faith and fair dealing.

95.     Defendants acted or failed to act such that Plaintiffs were prevented from
enjoying the benefits of their contracts with Defendants.

96.     Defendants breached their covenant of good faith and fair dealing.

97.     Defendants are jointly and severally liable to plaintiffs for actual and punitive
damages.

98.     Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest
on the purchase price for the annuity at the highest rate permitted by New Mexico law from the
date of such purchase until the date of judgment, plus post-judgment interest thereon at the
highest rate permitted by New Mexico law from the date of such judgment until the judgment is
paid.

99.     Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred
in this proceeding to the fullest extent permitted by New Mexico law.

18

### Seventh Claim for Relief
### *[Negligent Supervision]*

100. Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

101. PHL owed Plaintiffs a duty to exercise reasonable care in supervising Mr. Diamond.

102. PHL failed to supervise Mr. Diamond and thereby breached its duty of supervision.

103. PHL is liable to plaintiffs for actual damages and punitive damages.

104. Alternatively, PHL is liable to Plaintiffs for rescission of the annuity, plus interest on the purchase price for the annuity at the highest rate permitted by New Mexico law from the date of such purchase until the date of judgment, plus post-judgment interest thereon at the highest rate permitted by New Mexico law from the date of such judgment until the judgment is paid.

105. Defendants are liable to Plaintiffs for all the costs and attorney fees they incurred in this proceeding to the fullest extent permitted by New Mexico law.

### Eighth Claim for Relief
### *[Respondeat Superior]*

106. Plaintiffs incorporate by reference the preceding allegations as though set forth fully herein.

107. PHL is vicariously liable for the acts and omissions of Mr. Diamond and DARPS.

### PRAYER FOR RELIEF

Plaintiffs ask the Court to award them the following relief:

A. Declaratory relief that the annuity is unsuitable to meet Plaintiffs' stated needs;

19

B.    Actual damages for violations of the UIPA;

C.    Actual or statutory damages, trebled, for violations of the UPA;

D.    Actual and punitive damages for breach of fiduciary duty;

E.    Actual and punitive damages for negligent misrepresentation;

F.    Actual and punitive damages for breach of oral and/or written contract;

G.    Actual and punitive damages for breach of the covenant of good faith and fair dealing;

H.    Actual and punitive damages for negligent supervision;

I.    Attorney fees and costs; and

J.    Such other and further relief as the Court deems is just and proper.

Respectfully Submitted,

MARRS GRIEBEL LAW, LTD.


By:   /s/ Clinton W. Marrs
      Clinton W. Marrs
      1000 Gold Ave. SW
      Albuquerque, NM 87102
      (505) 433-3926

-and-

TREINEN LAW OFFICE PC
Rob Treinen
500 Tijeras Ave. NW
Albuquerque, NM 87102
(505) 247-1980
(505) 843-7129 (fax)
robtreinen@treinenlawoffice.com

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/14/2016 10:12:24 AM
WELDON J. NEFF
Dacia Schart

STATE OF NEW MEXICO
COUNTY OF SAN JUAN
ELEVENTH JUDICIAL DISTRICT COURT

CAROLINE H. SHRYOCK and GAYLE L. LEWIS
as trustees of THE CAROLINE H. SHRYOCK
LIVING TRUST,

     Plaintiff,

v.                           Case No. D-1116-CV-2016-00730

PHL VARIABLE INSURANCE COMPANY,
DIAMOND & ASSOCIATES RETIREMENT
PLANNING SERVICES, INC.  and MARK
STEPHEN DIAMOND,

     Defendants.

## PLAINTIFFS' JURY DEMAND

     Plaintiffs, by and through their undersigned attorneys, pursuant to Rule 1-038 NMRA

demand a trial by jury of all issues triable of right in this civil action.

                Respectfully submitted,

                MARRS GRIEBEL LAW, LTD.


                By_____/s/ Clinton W. Marrs_____
                    Clinton W. Marrs
                    1000 Gold Ave SW
                    Albuquerque, NM 87102
                    Telephone: (505) 433-3926

                -and-

                TREINEN LAW OFFICE PC
                Rob Treinen
                500 Tijeras Ave NW
                Albuquerque, NM 87102
                (505) 247-1980
                (505) 843-7129 (fax)
                robtreinen@treinenlawoffice.com
                    *Attorneys for Plaintiffs*